UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:21-CR-111-DCR-MAS-11 |
| v. | ) | |
| | ) | |
| CARL EDWARD HUNT, | ) | |
| | ) | |
| Defendant. | ) | |

## DETENTION OPINION & ORDER

The Indictment alleges that Defendant Carl Edward ("Hunt") conspired to distribute 500 grams or more of a methamphetamine mixture and 40 grams or more of a fentanyl mixture and possessed with intent to distribute 50 grams or more of a methamphetamine mixture and a fentanyl mixture, all in violation of 21 U.S.C. § 841(a)(1). [DE 165]. The United States orally sought detention under 18 U.S.C. 3142(f)(1)(C), [DE 200], and the Court conducted a detention hearing on June 23, 2022. [DE 214]. The Court afforded both parties all procedural rights outlined in the Bail Reform Act ("BRA"). Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion and as stated on the hearing record, the Court grants the Government's motion for detention.

## I.    BRA FRAMEWORK

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United*

1

*States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945.  An unrebutted presumption requires detention.  A rebutted presumption remains a pro-detention statutory factor.  *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk.  *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006).  Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger potential.  *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y],"

the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings.  18 U.S.C. § 3142(f).  The focus is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

As the Court's ruling and discussion on the record reflects, Hunt rebutted the presumption as to both flight or nonappearance and risk of danger.  However, the Government met its burden on both issues, requiring detention under the BRA.  The Government showed by a preponderance of the evidence that no conditions can reasonably assure that Hunt will not flee and that he will appear at the proceedings in this case.  It also established by clear and convincing evidence that no conditions can reasonably assure community safety.  Thus, the Court grants the United States' motion for detention.

### A.   RISK OF FLIGHT OR NONAPPEARANCE

Hunt put forth sufficient evidence to overcome the presumption as to risk of flight or nonappearance.  Specifically, Hunt's mother, Debra Hunt, testified that she would allow Hunt to reside with her and Hunt's brother at her residence and that she would monitor Hunt in accordance with any release conditions the Court may impose.  Ms. Hunt testified that she would report any violations of release conditions to the United States Probation Office.  These facts are sufficient to overcome the light presumption burden.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption imposes on the defendant a threshold "burden of production"; in

3

response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the Government argued that Hunt poses a risk of nonappearance and that no conditions can sufficiently mitigate that risk.  The United States noted that Hunt failed to appear on several occasions when facing significant drug-trafficking or possession charges in state court, that Hunt has a pending bail-jumping charge, and that Hunt continued to engage in drug trafficking while released on bond.  Additionally, the United States pointed to Hunt's long history of substance use problems.

On balance, the Court concludes the United States has proved by a preponderance of evidence that Hunt presents a serious risk of flight or nonappearance.  Hunt's Pretrial Services Report reveals a significant pattern of failing to appear in state court proceedings. Facing various drug-possession and trafficking charges, Hunt failed to appear once in 2012, six times in 2018, three times in 2019, and he has a pending bail-jumping charge from 2020. [PSR at 5-8]. *See United States v. Gibson*, 382 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating).  Additionally, Hunt was convicted of second-degree fleeing or evading police and giving an officer false identifying information. *See United States v. Vysniuaskas*, No. 10-20717, 2011 WL 5433960, at *9 (E.D. Mich. Nov. 9, 2011) (citing as a flight risk indicator the defendants' "use of aliases allowed [that] them to avoid detection by law enforcement").  And, while Hunt has received treatment for drug use disorder for the preceding six-to-eight months, he has a long history of opiate and methamphetamine use, indicating a risk of nonappearance. [PSR at 3]. *See U.S. v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)). And finally, Hunt faces a lengthy

4

sentence if convicted of the instant charges. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee").

Moreover, Hunt's drug-trafficking charge itself indicates a risk of flight or nonappearance. *United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee)). And Hunt has several drug-trafficking and possession convictions in state court. [PSR at ("PSR") 3-5, 7, 9].

Having found that the Government demonstrated that Hunt poses a risk of flight or nonappearance, the Court also finds that no combination of conditions can sufficiently mitigate that risk. Hunt's history of repeated failures to appear, a pending bail-jumping charge, and a long history of drug use indicate a strong risk of nonappearance even accounting for Hunt's strong familial support and available GPS monitoring. As such, flight- or nonappearance-based detention is warranted.

**B.   RISK OF DANGER**

Though the Court finds pretrial detention is warranted based on Hunt's risk of flight or nonappearance, the Court will analyze danger-based detention in the interest of completeness. Hunt overcame the presumption of detention as to danger risk by demonstrating his ability to reside with his mother and the availability of home-detention and monitoring conditions. However, the Government has shown by clear and convincing evidence that Hunt's risk of danger provides an independent basis for pretrial detention under the BRA.

1.    **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1). The nature of Hunt's offense—conspiracy to traffic a large quantity of methamphetamine and fentanyl—strongly favors detention.

Trafficking methamphetamine and fentanyl are exceptionally dangerous offenses that pose a serious risk of harm to the community. *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that he poses a danger to society. *Stone*, 608 F.3d at 945.

This factor weighs in favor of detention.

2.    **Weight of the Dangerousness Evidence**

The next factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

Although codified as a distinct factor, consideration of the weight of danger evidence against Hunt overlaps with consideration of the first and third factors, Hunt's charged offense and his history and characteristics. 18 U.S.C. § 3142(g)(1),(3). The serious nature of Hunt's charged

offense, combined with his pattern of drug-related offenses and failures to appear in court, as discussed below, amount to a significant sum of evidence indicating community danger.

This factor favors detention.

### 3. History and Characteristics

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Hunt's criminal history strongly indicates a risk of danger to the community.  Between 2009 and 2020, Hunt was convicted four times for possession of a controlled substance, once for attempted possession of a controlled substance, and four times for trafficking in a controlled substance. [PSR at 4-5, 7, 9].  Particularly concerning is the fact that Hunt received two more controlled-substance trafficking charges in 2020, and he continued to traffic controlled substances while those charges were pending. [PSR at 9-10].

Further, the mitigating aspects of Hunt's history and characteristics do not sufficiently assuage his risk of danger.  While Hunt put forth evidence of family support, possible employment prospects, and six-to-eight months of successful substance use disorder treatment, Hunt's extensive criminal history demonstrates that he is deeply invested in criminal activity and not dissuaded by legal consequences. The third BRA factor strongly favors detention.

### 4. Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  As discussed,

the potential danger to the community posed by Hunt's continued drug trafficking is significant, especially given the large quantity of drugs Hunt is alleged to have conspired to traffic in the current offense.  And Hunt's habit of continuing to engage in drug trafficking despite numerous convictions in state court and, at least in one instance, while additional drug-trafficking charges were pending against him, show that Hunt is not likely to be discouraged from engaging in dangerous conduct if released before trial.  *See United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  The risk of releasing Hunt is simply too great, and this final factor tips decidedly in favor of detention.

### 5.        Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Hunt presents a high risk of continued drug trafficking if released and, therefore, he is seriously dangerous.  While Hunt's mother testified that she is willing to monitor Hunt's conduct if Hunt were to be released into home detention with electronic monitoring at her residence, those Court remains unconvinced those conditions would reasonably quell the risk that Hunt would continue to traffic drugs.  *See United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant had already participated in the charged heroin distribution scheme from his own home, where he proposed to be released).

The Court therefore finds that the Government has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Detention is warranted based on Hunt's risk of danger to the community.

### III.    <u>CONCLUSION</u>

In sum, the Court finds that the United States proved by a preponderance of the evidence that Hunt is an irremediable flight and nonappearance risk and proved by clear and convincing evidence that he poses a danger to the community that cannot be mitigated with conditions. Therefore, the BRA mandates that Hunt remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 6th day of July, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge